1
2
3
4
**UNITED STATES DISTRICT COURT**

5
**DISTRICT OF NEVADA**

6
UNITED STATES OF AMERICA,

7
       Plaintiff,

  v.

8
DAMIEN PATILLO,

9
       Defendant.

Case No. 2:22-cr-00057-JCM-NJK

REPORT AND RECOMMENDATION

(Docket No. 69)

10

11
    This matter was referred to the undersigned magistrate judge on Defendant Damien

12
Patillo's motion to suppress evidence. Docket No. 69; *see also* Docket No. 70 (corrected image).

13
The Court has considered Defendant's motion and exhibits, the United States' response and

14
exhibits, and Defendant's reply. Docket Nos. 69-74.

15
**I.**     **BACKGROUND**

16
    At 8:02 p.m. on September 12, 2021, Las Vegas Metropolitan Police Department

17
("LVMPD") Officers Lindsey and Martinez were operating an unmarked vehicle in the area of

18
Clark Street and Stephanie Street. *See* Docket No. 73-1 at 3. The officers observed a black man

19
and white woman walking from west to east at that intersection and failing to yield to oncoming

20
traffic. *Id.* The officers observed that the man was wearing a black shirt and gray pants, and that

21
he had a small, closed bag secured around his chest. *Id.*

22
    LVMPD Officers Forcan and Cebilla-Sosa, who were in the area in a marked patrol unit,

23
conducted a stop based on the information given to them by Officers Lindsey and Martinez that

the subjects had failed to yield to oncoming traffic. *Id.* When the officers activated the patrol lights and sirens, however, the man ran away through a desert lot. *Id.*; *see also* Gov. Ex. 2 at 00:19. The man was chased, apprehended, and identified as Damien Patillo. Docket No. 73-1 at 3. A query through the Shared Computer Operation for Protection and Enforcement (SCOPE) system revealed that Defendant has prior felony convictions, including for violent offenses, such that he is prohibited from possessing a firearm. *See id.* at 3-4.

As the officers took Defendant into custody, they saw that the bag across his chest was now open, when it had been closed prior to Defendant's attempted flight. *Id.* at 3. The officers retraced the path that Defendant had taken and Officer Martinez found a black and silver revolver on the ground. *Id.* Defendant's DNA was later identified on the firearm. *See* Docket No. 73-2 at 2-3.

Officer Forcan read Defendant his *Miranda* rights. Docket No. 73-1 at 3; *see also* Gov. Ex. 3 at 1:10. Defendant acknowledged that he understood his rights. *See, e.g.*, Docket No. 73-1 at 3. Defendant denied owning the revolver and claimed that had had only fled from officers because he had syringes with "dope" in his pocket. *See, e.g.*, Gov. Ex. 3 at 1:48-2:03. Defendant also repeatedly acknowledged that he had jaywalked as Officer Lindsey and Officer Martinez initially observed. *See, e.g.*, *id.* at 9:15 ("I had jaywalked, I admit that"). Prior to placing Defendant in the patrol vehicle to transport him to jail, Officer Cebilla-Sosa conducted a search incident to arrest. See Docket No. 73-1 at 3. Officer Cebilla-Sosa searched the upper area inside Defendant's underwear and located a clear plastic bag containing 16 small individually packaged clear baggies of methamphetamine. Docket No. 73-1 at 3.

On March 15, 2022, a federal grand jury sitting in Las Vegas, Nevada issued an indictment charging Defendant with one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), along with one count of possession with intent to distribute

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).  Docket No. 1.  On October 18, 2022, the grand jury issued a superseding indictment, which added a third count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Docket No. 34.  Following a change of counsel, the parties stipulated to continue trial and the pretrial motions deadline.  Docket No. 65.  The pretrial motions deadline was continued to March 13, 2023.  Docket No. 66 at 4.  On March 16, 2023, Defendant filed the instant motion to suppress.  Docket No. 69; *see also* Docket No. 70 (corrected image).

## II.  REQUEST FOR EVIDENTIARY HEARING

The Court begins with Defendant's request for an evidentiary hearing.  *See* Docket No. 70 at 1; *see also* Docket No. 74 at 2.  The United States opposes the request.  *See* Docket No. 73 at 19.

The Ninth Circuit has long held that an evidentiary hearing on a motion to suppress is warranted only if the moving papers allege facts with sufficient definiteness, clarity, and specificity to establish that contested issues of material fact exist.  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (collecting cases).  "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one.  Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required."  *Id.* at 621.  The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.  *United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991) (per curiam).

The issues at play in the motion are primarily legal ones and Defendant's motion does not meaningfully contest issues of material fact. *See* Docket No. 70 at 2-5.[1] Defendant provides a bald assertion that he "denies the existence of a pedestrian crossing violation" and seeks an evidentiary hearing on that ground. *See* Docket No. 74 at 2; *see also* Docket No. 70 at 2 (asserting that Defendant "disputes this factual rendition" and that "[i]t is believed that officers created a false narrative to create a constitutionally allowable interaction"). His *ipse dixit* aside, Defendant fails to explain how this factual issue could be in reasonable dispute given the record in this case, including Defendant's admission to the underlying violation. *See* Gov. Ex. 3 at 9:15 ("I had jaywalked, I admit that"). Defendant's bald assertion that the underlying violation did not happen is insufficient to justify an evidentiary hearing. *See United States v. Ramirez-Garcia*, 269 F.3d 945, 947 (9th Cir. 2001) ("A hearing is not required on a motion to suppress if the grounds for suppression consist solely of conclusory allegations of illegality"); *see also United States v.*

---

[1] Although unclear, it appears that Defendant may be arguing that a hearing is necessary to analyze the propriety of the stop pursuant to *United States v. Grigg*, 498 F.3d 1070 (9th Cir. 2007). *See, e.g.*, Docket No. 70 at 6. *Grigg* addresses a completed misdemeanor that was committed outside the presence of law enforcement, *see* 498 F.3d at 1080 & n.7, and courts routinely decline to apply *Grigg* to arrests for misdemeanors that were observed by law enforcement, *see United States v. Tellis*, 2019 WL 3939059, at *2 n.2 (D. Nev. June 17, 2019); *United States v. Soto*, 2017 WL 4325588, at *4 (D. Ariz. Aug. 11, 2017); *Hesterberg v. United States*, 2014 WL 1572962, at *7 (N.D. Cal. Apr. 18, 2014). The undersigned agrees with the United States that *Grigg* is not implicated in this case. *See* Docket No. 73 at 14.

Defendant also argues that a negative inference should be drawn against the United States for purported violations of body camera procedures. *See* Docket No. 70 at 5. Defendant cites to no legal authority for such an adverse inference, so the request fails as being unsupported by points and authorities. *See United States v. Wetselaar*, 2013 WL 8206582, at *7 n.6 (D. Nev. Dec. 13, 2013), *adopted*, 2014 WL 1366722 (D. Nev. Apr. 7, 2014). Defendant's request is also factually untenable given that there was no violation of the body camera procedures for the reasons explained by the United States. *See* Docket No. 73 at 15; *see also United States v. Hicks*, 2019 WL 2905047, at *2 n.3 (D. Nev. July 5, 2019). The undersigned declines to draw a negative inference against the United States.

1   *Tuyakbayev*, 2017 WL 29337, at *3 (N.D. Cal. Jan. 3, 2017) (conclusory assertion that the

2   defendant was not speeding was insufficient to establish factual dispute requiring an evidentiary

3   hearing to challenge officer's account that the defendant was speeding).

4        Accordingly, the Court concludes that there are no contested issues of fact that require an

5   evidentiary hearing.

6   **III.**    **ANALYSIS OF MOTION TO SUPPRESS**

7        Defendant seeks suppression of evidence on the ground that reasonable suspicion did not

8   exist at the time of his stop. Docket No. 70 at 3. To that end, Defendant argues that jaywalking is

9   no longer a criminal offense in Nevada, such that it cannot form a proper basis for the stop, and

10   that the United States has otherwise failed to establish reasonable suspicion. Docket No. 70 at 3-

11   6. The United States responds that Plaintiff has no standing to challenge the seizure of his

12   abandoned firearm and, at any rate, that reasonable suspicion existed in the circumstances. Docket

13   No. 73 at 4-19. Defendant replies that there was no "illegal conduct" on which to predicate the

14   stop. Docket No. 74 at 2. The United States has the better arguments.

15      A.    Fourth Amendment Standards

16        The Fourth Amendment protects "the right of the people to be secure in their persons,

17   houses, papers, and effects against unreasonable searches and seizures." The Fourth Amendment

18   protects "people, not places" and their legitimate and reasonable expectations of privacy. *Katz v.*

19   *United States*, 389 U.S. 347, 350-51 (1967). Reasonableness is the touchstone of the Fourth

20   Amendment. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). If evidence is obtained in violation of

21   the Fourth Amendment, that evidence and evidence derived from it can be suppressed as the "fruit

22   of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963); *see also United*

23

*States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016); *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013).

### B.    Abandonment

The Court first addresses the United States' argument that Defendant abandoned the revolver and, consequently, lacks standing to challenge its seizure.   Docket No. 73 at 5-9. Defendant did not respond to this argument. *See* Docket No. 74 (reply).

To have Fourth Amendment "standing" to "contest the legality of a search or seizure, the defendant must establish that he had a 'legitimate expectation of privacy' in the place searched or in the property seized." *United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir. 1986) (emphasis added) (citation omitted).  Defendant bears the threshold burden of establishing standing. *United States v. Thomas*, 447 F.3d 1191, 1199 (9th Cir. 2006) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)).

A "defendant who abandons property has no standing to contest its search and seizure." *United States v. Stephens*, 206 F.3d 914, 917 (9th Cir. 2000); *see also United States v. Gilman*, 684 F.2d 616, 619 (9th Cir. 1982).  Whether a defendant abandons property is a question of fact; a court must examine the totality of circumstances, including whether the defendant denied ownership of the property.  *United States v. Gonzalez*, 979 F.2d 711, 714 (9th Cir. 1992). Abandonment is determined "by measuring the intent of a party in objective terms." *Gilman*, 684 F.3d at 619.  It may "be inferred from words, acts and other objective facts" that the person relinquished "a reasonable expectation of privacy in his property." *Id.*

Defendant has not met his burden of establishing standing with respect to the revolver. Upon seeing law enforcement approaching, Defendant ran into an adjacent desert lot. *See, e.g.*,

Gov. Ex. 2 at 00:19.[2]  During that attempted escape, Defendant discarded the revolver onto the ground.  *See* Docket No. 73-1 at 3.  Defendant then repeatedly denied to the officers that he owned the gun.  *See, e.g.*, Gov. Ex. 3 at 1:48-2:03.  The totality of the circumstances clearly demonstrate that Defendant abandoned the revolver.

Accordingly, the undersigned finds that Defendant abandoned the revolver and lacks standing to challenge its seizure.[3]

C.    Reasonable Suspicion

The Court next turns to Defendant's argument that reasonable suspicion to stop him did not exist.  *See* Docket No. 70 at 2-5; *see also* Docket No. 74 at 2.  The United States counters that reasonable suspicion existed for the stop given the circumstances.  Docket No. 73 at 9-14

"The Fourth Amendment permits brief investigative stops ... when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *Navarette v. California*, 572 U.S. 393, 396 (2014) (internal quotation marks omitted).  An investigatory detention, a brief seizure by police based on reasonable suspicion of criminal activity, is a "narrowly drawn exception to the probable cause requirement of the Fourth Amendment."  *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *see also United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (*en banc*) (Fourth Amendment permits investigatory stops when law enforcement officers have "reasonable suspicion" that criminal activity "may be afoot")

_____

[2] Defendant had not been seized at this juncture.  *McClendon*, 713 F.3d at 1215 (when "an individual flees from police, no submission occurs until the defendant is physically subdued").

[3] In addition to arguing abandonment of the revolver, the United States argues that the narcotics are subject to the inevitable discovery exception.  *See* Docket No. 73 at 16-19.  Given the finding made below as to the existence of reasonable suspicion, the Court need not resolve the merits of the United States' inevitable discovery argument.

(internal quotation marks omitted).  "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion."  *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*).

The police may stop an individual reasonably suspected of criminal activity, question him briefly, and perform a limited pat-down frisk for weapons.  *Terry*, 392 U.S. at 22-24.  "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."  *Id*. at 21 (citations and internal quotation marks omitted).  "In assessing whether a detention is too long in duration to be justified as an investigative stop," it is proper "to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly."  *United States v. Sharpe*, 470 U.S. 675, 686 (1985).  Ultimately, the analysis remains one of reasonableness, and thus the court must examine the "totality of the circumstances" surrounding the stop to determine whether the length is reasonable.  *See United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008).  Reasonable suspicion "is dependent upon both the content of information possessed by police and its degree of reliability."  *United States v. Edwards*, 761 F.3d 977, 983 (9th Cir. 2014) (internal citation omitted).

Determining reasonable suspicion requires considering the totality of the circumstances, and "all relevant factors must be considered in the reasonable suspicion calculus-even those factors that, in a different context, might be entirely innocuous."  *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003) (quoting *United States v. Arvizu*, 534 U.S. 266, 277-78 (2002)).  Reasonable suspicion may depend on an officer's personal experience and special training to make

inferences and deductions, as long as the conclusions are reasonable.  *United States v. Montero-Camargo*, 208 F.3d 1122, 1131 (9th Cir. 2000) (internal citation omitted); *see also United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)) (police officer "is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation'").

When considering the totality of the circumstances, courts must keep in mind that reasonable suspicion is a "commonsense, nontechnical conception[ ] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.'"  *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).  Reasonable suspicion may not be based on "broad profiles," "overbroad generalizations," or "a prefabricated or recycled profile of suspicious behavior[.]" *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1121, 1124, 1126 (9th Cir. 2002) (internal quotation marks omitted).  However, a stop may be founded on reasonable suspicion despite a possible innocent explanation for every police observation.  *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000).  Moreover, given that the standard for reasonable suspicion is "a particularized and objective basis for suspecting the person stopped of criminal activity[,]" the "quantum of proof needed for reasonable suspicion is less than a preponderance of evidence, and less than probable cause." *Id*. (internal quotation marks omitted).

Temporarily handcuffing Defendant does not make the *Terry* frisk automatically invalid because a permissible *Terry* frisk takes place when an officer suspects the Defendant is dangerous. *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1983) ("A brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a *Terry* stop and does

not necessarily convert the stop into an arrest.").  Indeed, it stands to reason that the issue of whether Defendant was permissibly handcuffed prior to the pat-down collapses into whether the officer reasonably believed the individual was armed and dangerous (and therefore justified in conducting a *Terry* frisk).  *See, e.g.*, *United States v. Kinsey*, 952 F. Supp. 2d 970, 973 (E.D. Wash. 2013).

The court must, therefore, determine whether Defendant's investigatory detention was based on reasonable suspicion.  Whether a person has been seized for purposes of the Fourth Amendment is a mixed question of law and fact.  *United States v. Kim*, 25 F.3d 1426, 1430 (9th Cir. 1994).  The Ninth Circuit defines "reasonable suspicion" as "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity."  *United States v. Rojas-Millan*, 234 F.3d 464, 468-69 (9th Cir. 2000) (quoting *Lopez-Soto*, 205 F.3d at 1105).  If an officer does not have reasonable suspicion, and the stop therefore violates the Fourth Amendment, any evidence obtained as a result of the stop must be suppressed as fruit of the poisonous tree.  *United States v. Thomas*, 211 F.3d 1186, 1192 (9th Cir. 2000) (citing *Wong Sun*, 371 U.S. at 484-85).

In looking at the totality of the circumstances, the Court finds that specific, articulable facts, together with objective and reasonable inferences, existed to give rise to reasonable suspicion for the stop in this case.  Officers personally observed Defendant violating the law when he

jaywalked and impeded traffic in violation of N.R.S. 484B.287.  Docket No. 73-1 at 3.[4]  The

reasonable suspicion was heightened when Defendant fled from officers upon seeing law

enforcement's approach.  *See* Gov. Ex. 2 at 00:19; *see also Illinois v. Wardlow*, 528 U.S. 119, 124

(2000) ("evasive behavior is another pertinent factor in determining reasonable suspicion," even

if it alone may not be sufficient to justify a stop).

Despite this factual record, Defendant contends that his stop was improper because the

state of Nevada "decriminalized" his conduct a few months earlier.  *See, e.g.*, Docket No. 70 at 4-

5.  Defendant is correct that the state statute at issue now provides that a pedestrian's failure to

yield the right of way to vehicles is punishable by a civil penalty, N.R.S. 484B.287(2), but

Defendant is wrong in arguing that the civil nature of the penalty obviates the officers' justification

for the stop.  A failure to yield continues to be a violation of the law, which is subject to

enforcement by officers.  *See id.*; *see also* N.R.S. 482.155 ("The Department, all officers thereof

and all peace officers in this State shall enforce the provisions of this chapter").  Indeed, the

legislative record reveals that the state in making this amendment specifically contemplated that

stops would continue to be permissible for this civil violation.  *See* Nev. Assembly Comm. Minutes

---

[4] Defendant contends baldly that he "disputes this factual rendition" and that it "is believed that officers created a false narrative" to support the stop.  Docket No. 70 at 2.  Defendant makes these conclusory assertions despite the fact that he admitted to the jaywalking offense.  *See, e.g.*, Gov. Ex. 3 at 9:15 ("I had jaywalked, I admit that").  Defendant's boilerplate that he does not believe the officers does not change the outcome here.  *Cf. Howell*, 231 F.3d at 621.

The Court is similarly unpersuaded by Defendant's suggestion that he was stopped away from the site of his jaywalking, *see* Docket No. 70 at 2, as he was stopped in close proximity moments later, *see, e.g.*, Docket No. 73 at 11-12.

1    from April 1, 2021, at p. 25 ("I wanted to clarify that we are not saying it is a criminal offense, but

2    an officer would still be able to stop somebody").[5]

3          The United States Supreme Court has squarely rejected the contention that officers with

4    reasonable suspicion of a traffic violation lack the ability to conduct an investigatory stop.  *See*

5    *Whren v. United States*, 517 U.S. 806, 819 (1996).  The Ninth Circuit has applied this precedent

6    broadly.   In *United States v. Choudhry*, officers observed an illegally parked vehicle and

7    illuminated it with spotlights to determine if it was occupied.  461 F.3d 1097, 1098-99 (9th Cir.

8    2006).  Officers then saw "hurried movements" within the vehicle.  *Id.* at 1099.  At this point, the

9    officers turned on their emergency lights and proceeded to make an investigatory stop.  *Id.*  The

10   officers smelled marijuana as they approached the vehicle, and marijuana was subsequently

11   discovered, as was a gun under Choudhry's seat.  *Id.*  Choudhry was indicted for violation of 18

12   U.S.C. § 922(g), possession of a firearm by a felon.  *Id.*  Choudhry filed a motion to suppress the

13   evidence seized as a result of the stop, arguing that the officers lacked reasonable suspicion.  *Id.*

14   The Ninth Circuit flatly rejected that argument and held that a traffic violation is sufficient to

15   justify an investigatory stop "regardless of whether (i) the violation was merely pretextual, (ii) the

16   stop departed from the regular practice of a particular precinct, or (iii) the violation was common

17   and insignificant.  *Id.* at 1102.  The Ninth Circuit further "interpreted *Whren* as applying generally

18   to traffic code violations" including to a "civil parking violation."  *Id.*  In short, a civil "traffic

19   violation alone is sufficient to establish reasonable suspicion." *Id.* at 1100.  Given that Defendant

20   was observed by law enforcement committing a traffic violation, reasonable suspicion existed for

21   his stop regardless of the civil nature of that underlying offense.

22

23          [5]    https://www.leg.state.nv.us/Session/81st2021/Minutes/Assembly/JUD/Final/665.pdf
     (last visited Apr. 17, 2023)

## IV.  RECOMMENDATION

In light of the above, the undersigned concludes that Defendant abandoned the revolver at issue and lacks standing to challenge its seizure, and that reasonable suspicion for the stop existed at any rate.  Accordingly, the undersigned **RECOMMENDS** that Defendant's motion to suppress evidence, Docket No. 69, be **DENIED**.

DATED: April 21, 2023

_____
Nancy J. Koppe
United States Magistrate Judge

### NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).